# EXHIBIT D

```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                                :
                                      :    Docket #1:20-cr-00234-
 UNITED STATES OF AMERICA,            :    LAP-4

                    Plaintiff,        :

   - against -                        :

 COOKS, COUNT,                        :    New York, New York
                                           September 25, 2020
                    Defendant.        :
                                           REMOTE ARRAIGNMENT
----------------------------------- :     AND PRESENTMENT

                      PROCEEDINGS BEFORE
              THE HONORABLE JUDGE SARAH NETBURN,
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          UNITED STATES ATTORNEY'S OFFICE
                        BY:  ADAM S. HOBSON, ESQ.
                        One St. Andrew's Plaza
                        New York, New York 10007
                        212-637-2484

For Defendant:          KRAMER, LEVIN, NAFTALIS & FRANKEL, LLP
                        BY:  DARREN A. LAVERNE, ESQ.
                        1177 Avenue of the Americas
                        New York, New York 10036
                        212-715-9274




Transcription Service:  Carole Ludwig, Transcription Services
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:   Transcription420@aol.com


Proceedings conducted via video and teleconference and
recorded by electronic sound recording;
Transcript produced by transcription service
```

<u>**INDEX**</u>

<u>**E X A M I N A T I O N S**</u>

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---|---|---|---|---|

None

<u>**E X H I B I T S**</u>

| Exhibit Number | Description | ID | In | Voir Dire |
|---|---|---|---|---|

None

```
 1                          PROCEEDINGS                3
 2             THE CLERK:  Your Honor, this is the matter of
 3   United States v. Count Cooks, 20-cr-234.
 4             And starting with the government, would you please
 5   state your appearance for the record?
 6             MR. ADAM HOBSON:  Good afternoon, your Honor; Adam
 7   Hobson for the government.
 8             HONORABLE SARAH NETBURN (THE COURT):   Good
 9   afternoon.
10             MR. DARREN LAVERNE:  And good afternoon again,
11   your Honor. This is Darren LaVerne for Mr. Cooks.
12             THE COURT:  Thank you. Good afternoon. And good
13   afternoon, Mr. Cooks. My name is Judge Netburn.
14             MR. COUNT COOKS (THE DEFENDANT):  Good afternoon.
15             THE COURT:  I'll remind everybody that this is a
16   public proceeding and that members of the press and the
17   public are able to call in on a call-in line. All
18   participants are reminded that any recording or
19   rebroadcasting of this proceeding is strictly prohibited.
20             We are here for the initial presentment. And has
21   this matter been referred for an arraignment, as well?
22             MR. HOBSON:  Yes, your Honor.
23             THE COURT:  Okay. -- for the initial presentment
24   and arraignment and any bail argument for the defendant,
25   Count Cooks. Because of the COVID-19 pandemic, we're
```

| 1 | PROCEEDINGS                    4 |

2  conducting this proceeding remotely pursuant to the

3  authority provided by Section 15002 of the CARES Act and

4  the standing orders issued by our chief judge pursuant to

5  that Act. I am proceeding by video conference, and I myself

6  am outside of the district.  The defendant is also

7  appearing by video conference, and I can see him.

8          Sir, can you see and hear me?

9          THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  Okay. Defense counsel and counsel for

11  the government are appearing by telephone, as is a

12  representative from our Pretrial Services office.

13          Sir, you have the right to appear in court before

14  a judge for this presentment and arraignment; however, the

15  law allows you to consent to proceed with a remote

16  proceeding on your approval. Have you had an opportunity to

17  discuss this with your lawyer?

18          THE DEFENDANT:  Yeah.

19          THE COURT:  Mr. LaVerne, did you have any

20  opportunity to talk to your client about that he could

21  waive his right to appear in pubic and whether he consents

22  to proceed by remote means?

23          MR. LAVERNE:  Yes, your Honor, we did discuss the

24  issue earlier, and Mr. Cooks is prepared to proceed by

25  video.

```
 1                          PROCEEDINGS              5
 2              THE COURT:  Very well.  And, sir, I have a form
 3    that your lawyer has signed on your behalf. I just want to
 4    make sure that you do agree to proceed with this proceeding
 5    remotely.
 6              THE DEFENDANT:  Yes, ma'am.
 7              THE COURT:  Okay. Thank you.
 8              Can I have the date and time of the defendant's
 9    arrest?
10              MR. HOBSON:  Yes, your Honor.  The defendant was
11    arrested yesterday, September 24, at approximately
12    11:30 a.m.
13              THE COURT:  Thank you.
14              Sir, the purpose of today's proceeding is to
15    advise you of certain rights that you have, inform you of
16    the charges against you, consider whether counsel shall be
17    appointed for you, and decide under what conditions if any
18    you shall be released.
19              I'm now going to explain certain constitutional
20    rights that you have. You have the right to remain silent.
21    You are not required to make any statements. Even if you
22    have already made statements to the authorities, you need
23    not make any further statements; and any statements that
24    you do make can be used against you.
25              You have the right to be released, either
```

1                          PROCEEDINGS                6
2   conditionally or unconditionally, pending trial unless I
3   find that there are no conditions that would reasonably
4   assure your presence in court or the safety of the
5   community.
6           You have the right to be represented by an
7   attorney during all court proceedings, including this one,
8   and during all questioning by the authorities. If you
9   cannot afford an attorney, I will appoint one today to
10  represent you.  And I have reviewed your Financial
11  Affidavit, and based on the information contained in that
12  affidavit, I'm approving the appointment of your counsel.
13          Sir, you've been charged in a multicount
14  indictment. I want to go over those counts briefly. You've
15  been charged in Count One with participating in a
16  racketeering conspiracy. That charge is brought under
17  Title 18 U.S.C. § 1962(d). You are further charged in Count
18  Four with assault with a dangerous weapon in aid of
19  racketeering, and that is a violation of Title § 1959(a)(3)
20  and (2). In Count Five you're charged with Hobbs Act
21  robbery, which is a violation of Title 18 U.S.C. §§ 1951
22  and 2. Count Six charges you with use of a firearm in
23  furtherance of a crime of violence. That is a violation of
24  Title 18 U.S.C. § 924(c)(1)(A)(i)(ii) and 2. And Count Ten
25  charges you with narcotics trafficking, which is a

```
 1                        PROCEEDINGS                  7
```

 2  violation of Title 21 § 846. Count Eleven charges you with

 3  a firearm offense, which is a violation of Title 18 U.S.C.

 4  §§ 1924(c)(1)(A)(i)(ii)(iii) and 2.

 5          Mr. Cooks, have you had an opportunity to discuss

 6  this indictment with your lawyer?

 7          THE DEFENDANT:  Yes, ma'am.

 8          THE COURT:  Do you understand the nature of the

 9  charges?

10          THE DEFENDANT:  Yes, I understand the nature of

11  the charges.

12          THE COURT:  Okay, you have the right to have me

13  read this indictment to you in open court, but you can also

14  waive that right and you don't need me to read it to you.

15  But if you'd like, I can read this to you.

16          MR. LAVERNE:  Your Honor, I've just -- you know,

17  I've been through it in more detail with Mr. Cooks, and

18  we're prepared to enter a plea of not guilty and waive the

19  public reading.

20          THE COURT:  Okay. Very well.  So I'll enter a plea

21  of not guilty to these charges, sir.

22          THE DEFENDANT:  Yes.

23          THE COURT:  Counsel, are you prepared to make a

24  bail application at this time?

25          MR. LAVERNE:  Yes, your Honor.

```
 1                        PROCEEDINGS                    8
 2              THE COURT:  All right, let me hear from the
 3    government first.
 4              MR. HOBSON:  Yes, your Honor, we're seeking
 5    detention in this case, both on dangerousness and risk of
 6    flight. Obviously, this is a presumption case, given the
 7    seriousness of the charges that the Court just reviewed
 8    with the defendant and the defendant can't rebut the
 9    presumption here.
10              I know that the Court is generally familiar with
11    the Clay Avenue Mac Ballers gang because one of the other
12    defendants, Davonte Francis, was presented a couple of days
13    ago; but I just want to review some of the facts for the
14    Court. The Clay Avenue Mac Ballers are a violent set of the
15    Mac Ballers gang. They're based on Clay Avenue in the
16    Bronx. They sell a large amount of crack, they do
17    robberies, and they commit violence against rival gang
18    members. Their main rivals are the Rollin' 30s Crips, which
19    is a Crips that operates near them.  They routinely fight
20    over gang beats and drug territory because it's a very
21    valuable drug territory.
22              Just as one example, in May 2018, one of the Clay
23    Avenue Macs, who's a fellow defendant of the defendant
24    here, murdered one of the rival Rollin' 30s Crips. He's on
25    the indictment, and he's still a fugitive.
```

```
 1                      PROCEEDINGS                    9

 2           This particular defendant, Mr. Cooks, has also

 3  shot at members of the Rollin' 30s Crips, although

 4  fortunately, at least for the shooting that we're aware of,

 5  he does not appear to have killed anyone. Mr. Cooks also

 6  sells crack for the gang. He sells approximately 50 bags of

 7  crack a day, which is a very large amount. He's also known

 8  to carry a gun with him while he sells crack. In addition

 9  to carrying a gun while he sells crack, he also uses guns

10  to commit robberies for the gang. He's charged with one of

11  those robberies here, which was a gunpoint robbery of a

12  drug dealer.

13           The defendant has a large social media presence,

14  which he routinely uses to promote the gang, to sell drugs

15  and to talk about guns. He's a rap artist and raps about

16  gang membership frequently. One of his rap songs brags

17  about how long he has been in the gang and criminal

18  activity he's been committing since a very early age. It

19  includes the line, "Thirteen, I was selling packs; 15, I

20  was in the trap; 17, clapped my first." In other words, he

21  was selling packs of drugs at age 13, he was running the

22  trap-house apartments at age 15; and he shot his first

23  person or committed his first act of violence at age 17. As

24  the Court saw --

25           THE COURT:  I'm familiar -- I'm going to interrupt
```

```
1                          PROCEEDINGS                  10

2    you. Sorry, can I just interrupt you for one second?

3              MR. HOBSON:  Sure.

4              THE COURT:  Mr. Cooks, I see you raising your

5    hand, indicating you'd like to speak. I think your lawyer

6    would prefer that you not speak and that you let your

7    lawyer speak on your behalf. If you'd like, I can make

8    arrangements for you and your lawyer to speak before we're

9    done; but it's probably better if you let your lawyer speak

10   on your behalf, okay?

11             THE DEFENDANT:  All right.

12             THE COURT:  Okay. If your lawyer would like to say

13   anything or give different advice, obviously I don't want

14   to speak for your lawyer.

15             MR. LAVERNE:  No, I agree with that advice.  And I

16   just want to, again, remind Mr. Cooks that this is simply

17   the government reciting its allegations in the case.

18             THE DEFENDANT:  Okay.

19             THE COURT:  All right, sorry. The government can

20   continue.

21             MR. HOBSON:  That's fine, your Honor.

22             As is clear in the pretrial report, this is not

23   his first offense. He had a Youthful Offender adjudication

24   for both robbery and for burglary. He's been on probation

25   for that. While he was on probation for those offenses, he
```

```
 1                        PROCEEDINGS              11

 2   was continuing to be a member of the gang, to commit

 3   violence on behalf of the gang, to commit this robbery

 4   that he's charged with, and selling drugs. He has repeated

 5   arrests in addition to those robberies and burglaries --

 6   to those convictions, none of which have deterred him from

 7   continuing his criminal activity.

 8            I want to turn to risk of flight, which I think

 9   is a very strong concern here.  We indicted this case in

10   April, and it was unsealed when we arrested a number of

11   his codefendants. The defendant, however, has been a

12   fugitive since April.  We went everywhere back in April

13   looking for him.  We went to his grandmother, we went to

14   his girlfriend, we went to the friend whose apartment he

15   was arrested in today. We told everyone that he needed to

16   turn himself in, that he had a federal warrant out for his

17   arrest and that he was charged in these very serious

18   offenses. Every time we got a phone number for the

19   defendant, we went up on that phone number, and he dropped

20   that phone number. He kept posting to social media

21   throughout this time, but he was almost always using

22   public Wi-Fi networks, so we couldn't locate his precise

23   location.

24            During that time I think it's interesting that

25   one of the posts he made was a new music video.  That
```

```
 1                      PROCEEDINGS                 12
 2  music video was called, "I'm a Fugitive," and it featured
 3  the line, "I'm a fugitive, but I'm still doing shit,"
 4  showing that he was clearly aware that he was wanted by
 5  the federal government and that he was still on the run
 6  but committing crimes nonetheless. Last week he finally
 7  slipped up and made a Facebook post using a new cell phone
 8  that he had just activated while he was down in
 9  Greensboro, North Carolina. I should note that in the
10  Pretrial Report it appears that he was actually arrested
11  last week in Greensboro, North Carolina, but used a fake
12  identification card in another name. A few days after he
13  made that Facebook post, he made another post of a video
14  which was taken from his grandmother's apartment up here
15  in the Bronx. So he came from Greensboro back up to the
16  Bronx. We were able to get a trigger fish on that phone
17  number earlier this week, and then we finally got him
18  yesterday after six months of looking for him, frankly,
19  because we got lucky that he made a Facebook post using
20  that new phone.
21          It's obvious why he's fleeing here. He's facing a
22  27-year mandatory minimum and a potential sentence of
23  life. But even with that hanging over him, as he admits in
24  his rap song, he's still out there doing crimes, and he's
25  still on the run. There's nothing keeping him here. He has
```

```
 1                            PROCEEDINGS                 13
 2   no job, he's not in school. It's not clear he even has a
 3   residence. I think, according to his grandmother's
 4   statement in the Pretrial Report, he just runs the streets.
 5   Given this, we have no confidence that he will -- we have
 6   no way to assure that he will not flee again or that he
 7   will not continue committing crimes.  For those reasons, we
 8   don't think the presumption can be rebutted here.
 9             THE COURT:  Thank you. I'll hear from the defense
10   now.
11             MR. LAVERNE:  Thank you, your Honor. We think that
12   there are ways here to release Mr. Cooks and address the
13   government's concerns. Just sort of in terms of bottom-line
14   proposal, we're proposing that he be released with home
15   detention, an ankle bracelet and three cosigners.
16             I just want to highlight up front, your Honor,
17   that Mr. Cooks does have chronic asthma, which makes him
18   particularly susceptible to COVID, notwithstanding his
19   younger age.  And I think that probably distinguishes his
20   case from the other defendants who have come before you.
21   And I think it's reason, you know, to find here if there
22   is a way to release him consistent with the concerns of
23   the bail statute, we really should make every effort to do
24   that so that his health is not at risk.
25             Look, I recognize the very serious nature of the
```

```
 1                          PROCEEDINGS                    14
 2   allegations that are in the indictment. Of course, they are
 3   just allegations at this time, allegations that we deny. I
 4   would point out that in the indictment there is a murder
 5   which is mentioned by the government, and there's other
 6   allegations. With respect to Mr. Cooks, there really is
 7   only one specific allegation, which is a robbery that took
 8   place two years ago when he was 18 years old.
 9            On the government's proffer of evidence regarding
10   everything else, I heard stuff about social media posts, I
11   heard stuff about rap lyrics, but I heard nothing about
12   hard evidence that really show that Mr. Cooks was involved
13   in violence and drug dealing as alleged in the indictment.
14   Look, I think it's one thing -- and I'm sure we'll have
15   this fight down the road as to whether rap lyrics are good
16   evidence here, but people rap about all kinds of things.
17   And I don't think that sitting here at a bail hearing right
18   now, that's cause to keep Mr. Cooks in custody.
19            Mr. Cooks is 20 years old. He does have a stable
20   residence with his grandmother. We heard from the
21   prosecutor that his grandmother apparently said he runs the
22   streets, but I think that the Pretrial Report also noted
23   that he does stay consistently at his grandmother's house.
24   That's where he lives with his grandmother and his younger
25   sister. He is not working at present, but he has worked
```

```
 1                          PROCEEDINGS                 15
 2   over the last few years, including working at a job as a
 3   counselor mentoring younger kids in the neighborhood.
 4   That's a job that he had for some time and on a sort of
 5   volunteer basis and then was hired to do it and paid for
 6   his work at Bronx Connect. He's also been taking classes.
 7   He got his GED recently, showing that he does have ambition
 8   to move on in this world.
 9             We have spoken, your Honor -- we didn't have a lot
10   of time to sort of canvass his relations and his family,
11   but we were able quite quickly to reach three people who
12   are close to him who are willing to sign a bond, which I
13   think says a lot. We've spoken to his girlfriend of three
14   years; we've spoken to another close friend of his; and
15   we've spoken to the aunt of his girlfriend. All three of
16   these people are working and are responsible, you know,
17   citizens of this country. And, you know, I'm happy to
18   proffer more information about them, but I think they would
19   serve as good cosigners on a package here.
20             I do want to address also, just briefly, the
21   question -- the issue that was raised about flight concerns
22   and him being down in North Carolina. I actually -- look, I
23   mean, he did return -- I don't think the government
24   disputes that he was in North Carolina, but he did return
25   to New York on his own volition. My understanding, that he
```

```
 1                          PROCEEDINGS                16
 2   was down in North Carolina because he has an aunt there who
 3   is ailing, and he was visiting her. And to me, the fact
 4   that he came back to New York, even under the government's
 5   theory aware that there was this indictment pending and
 6   others had been arrested, shows that in actuality he's not
 7   a flight risk. And he really has nowhere else to go. His
 8   life, his whole life has been spent in the vicinity of the
 9   Bronx, living with his grandmother.  And, your Honor, I
10   would respectfully propose that a package that is strict
11   home detention, doesn't allow him out of the house; with
12   three people close to him signing on a bond would address
13   the concerns raised by the government and also keep
14   Mr. Cooks safe while this case is pending and keep him out
15   of harm's way in terms of COVID, given his asthma
16   condition.
17            THE COURT:  Thank you, counsel; I appreciate that.
18            Anything that the government wants to say in
19   response?
20            MR. HOBSON:  Your Honor, if there are particular
21   issues you would like me to address, I'm happy to; but I
22   don't think any of that comes close to rebutting the
23   presumption, and I'll just rest on what I said earlier.
24            THE COURT:  Great. Thank you very much, everybody.
25   Thank you for your arguments. I appreciate them. They were
```

1                         PROCEEDINGS                    17

2   very strong.

3          I've reviewed the indictment, and I have reviewed

4   the Pretrial Services Report and also listened to counsels'

5   arguments to me today. Based on everything that I have

6   before me, I do not believe that the defendant has rebutted

7   the presumption and believe that the Bail Reform Act

8   mandates that I detain the defendant, that he cannot be

9   released under any conditions that will satisfy me that he

10  won't be either a danger to the community or a flight risk.

11  So I am ordering him detained.

12          Anything further on this case?

13          MR. HOBSON:  Your Honor, if I can just state for

14  the record that our next conference before Judge Preska is

15  currently scheduled for November 10th. Time has been

16  excluded under the Speedy Trial Act already until that

17  date. And I've been in touch with defense counsel about

18  discovery; it's ready to be produced as soon as he provides

19  us a hard drive.

20          THE COURT:  Excellent. All right. Anything --

21          MR. LAVERNE:  And, your Honor --

22          THE COURT:  -- from defense? Yes?

23          MR. LAVERNE:  Yes, I'm sorry to cut you off, your

24  Honor.

25          Yes, I did hand up a medical form --

```
 1                       PROCEEDINGS                    18
 2            THE COURT:  I have it.
 3            MR. LAVERNE:  -- and I'd just ask that your Honor
 4   sign it. Thank you.
 5            THE COURT:  Yes, I have it, and it has been
 6   signed.
 7            MR. LAVERNE:  Appreciate it.
 8            THE COURT:  Okay. Do you want to speak to your
 9   lawyer?
10            THE DEFENDANT:  Yes.
11            THE COURT:  Okay. I'm going to adjourn.
12   Ms. Plecher, if you can just make arrangements so that
13   Mr. Cooks and his lawyer can speak before they separate?
14            THE CLERK:  Okay, your Honor.
15            THE COURT:  Okay. Thank you, everybody.  Stay
16   safe.
17            (Whereupon, the matter is adjourned.)
18
19
20
21
22
23
24
25
```

19

C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing
transcript of proceedings in the case of USA v. Cooks,
Docket #20-cr-00234-LAP-4, was prepared using digital
transcription software and is a true and accurate record of
the proceedings.

Signature_____███████████_____

Carole Ludwig

Date:    January 12, 2021